IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**PATRICIA TAFOYA MARLIN,**

      **Plaintiff,**

vs.                                                                                   **No.  10cv0049 DJS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's (Marlin's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 12]**, filed May 13, 2010, and fully briefed on July 28, 2010.  On March 28, 2008, the Commissioner of Social Security issued a final decision denying Marlin's claim for disability insurance benefits.  Marlin seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

**I.  Factual and Procedural Background**

Marlin, now fifty-seven years old (D.O.B. June 7, 1953), filed her application for disability insurance benefits on December 7, 2005, alleging disability since December 31, 2003 (Tr. 30), due to bilateral ulnar neuropathy (Tr. 146), carpal tunnel (Tr. 134), diverticulosis, diabetes, uric acid stone, foot problems, hypertension, and TMJ.  Tr. 94.  Marlin completed one year of college and has past relevant work as a legal assistant and secretary.  On March 28, 2008, the ALJ denied benefits, finding Marlin was not disabled as she retained the residual functional

capacity (RFC) to perform light work except she could only frequently handle and finger bilaterally.  Tr. 33.  The ALJ further found Marlin's "statements concerning the intensity, persistence and limiting effects of [her alleged symptoms] were not entirely credible to the extent they [were] inconsistent with the residual functional capacity assessment." Tr. 35.  On November 25, 2009, the Appeals Council denied Marlin's request for review of the ALJ's decision.  Tr. 3.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Marlin seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see*

*Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zolantski*, 372 F.3d at 1200).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under

20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  *Id.*

In support of her motion to reverse and remand, Marlin makes the following arguments: (1) the ALJ's RFC finding is unsupported by substantial evidence and legally erroneous; (2) the ALJ's determination that Plaintiff could perform her past relevant work is unsupported by substantial evidence and legally erroneous; and (3) the ALJ's credibility finding is unsupported.

## A.  RFC Determination

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, §200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his conclusion.  *See* SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities n an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the record."  *Id.*  The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.*

Marlin contends the ALJ's finding that she retains the RFC for light work involving no more than frequent handling and fingering bilaterally is not supported by substantial evidence.

Marlin submitted additional evidence from her treating physician to the Appeals Council. This evidence included records related to her November 7, 2007 right ulnar nerve transposition.[1]

> In his decision, the ALJ found:
>
> In terms of the claimant's alleged symptoms from carpal tunnel syndrome she testified at the hearing that her pain was in the range of 7 to 9 out of 10, but the medical record indicates that she rated her pain at 2 out of 10, showing a tendency for symptom magnification. Additionally, the claimant rarely uses any pain medication, another indication that her pain has been magnified for purposes of pursuing a disability claim. Significant pain is usually accompanied by use of prescription pain medication, or at least frequent use of over-the-counter medications, especially by someone who could be expected to have health insurance.
>
> Her own testimony confirmed that in the general economy the position of administrative assistant is not expected to require significant use of a computer, and should be easier for someone who has had carpal tunnel symptoms. The claimant retired under the rules for regular retirement from her State employer and not under a claim for disability. Much of the claimant's medical information is from 2006 and the information is sparse for the period from 2003 through 2005.
>
> <u>As for the opinion evidence, there is no medical opinion in evidence that the claimant has been disabled from all substantial gainful activity</u>.
>
> The claimant has continued to be able to cook, clean, shop and handle some yard work. She has some problems with buttoning and uses paper plates because of breakage and dropping. Although she related allegations of carpal tunnel syndrome she managed to continue to work despite these conditions for more than 12 years following diagnosis and treatment for the condition. Her hypertension and diabetes are generally controlled with medication.
>
> In sum, the above residual functional capacity assessment is supported by the medical record and the testimony of the claimant.

Tr. 35 (emphasis added).

## B. Treating Physician Opinion

---

[1] Although Marlin's treating physician's records were not before the ALJ, they were before the Appeals Council. Tr. 3. Therefore, the Court must consider them when evaluating the Commissioner's decision for substantial evidence. *See, O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)(new evidence becomes part of the administrative record to be considered by the Court when evaluating the Commissioner's decision for substantial evidence).

Marlin submitted evidence to the Appeals Council from Michael Baten, M.D., her treating neurologist. See Tr. 380-81. On June 6, 2008, Dr. Baten completed a "Manipulative Limitations Residual Functional Capacity Questionnaire for the period of 4-28-06 to Present." Tr. 380. Dr. Baten noted Marlin experienced the following signs or symptoms that affected her wrists, hands or fingers: (1) tenderness; (2) paresthesia; and (3) pain. *Id.* Dr. Baten indicated Marlin had <u>significant limitations</u> with reaching, handling or fingering. Tr. 381. Furthermore, Dr. Baten opined Marlin could use her hands to grasp, turn or twist objects 20% of the time in an 8-hour workday, could use her fingers for fine manipulation 20% of the time in an 8-hour workday, and could reach (including overhead) 20-30% of the time in an 8-hour workday. *Id.*

Dr. Baten is considered a treating physician. The opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(d)(2). However, an ALJ may disregard a treating physician's opinion if it is not so supported. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). "When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Nonetheless, "[i]n choosing to reject the treating physician's assessment an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his . . . own credibility judgments, speculations or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)(quotations and italics omitted).

"Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§]404.1527.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4).  Moreover, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano,* 26 F.3d at 1029.

Dr. Baten's RFC was not before the ALJ.  However, the Court notes that the record supports his findings.  Tr. 146(June 26, 2007– "She has significant ulnar neuropathy, particularly on the right."); Tr. 260-61 ("This lady clearly has bilateral ulnar neuropathy which the right side is considerably more involved than the left and substantially more abnormal.").   Additionally, Marlin submitted a copy of her "Operative Report" indicating she had a "Right ulnar nerve transposition at the elbow" on November 26, 2007, seventeen days after she attended the Administrative Hearing.  Tr. 14.  Raphael I. Shapiro, M.D., also a treating physician, performed the surgery.  Dr. Shapiro noted: "This 54-year-old female has had a long-standing ulnar neuropathy.  She has had nerve conductions." *Id.*

The Court will remand this matter in order to give the ALJ the opportunity to consider this evidence and redetermine Marlin's RFC.  As Marlin argues, Dr. Baten's RFC assessment establishes that she cannot perform her past relevant work.  This is so because her past relevant job as an administrative assistant as generally performed in the national economy requires "frequent" use of her upper extremities for reaching, handling, and fingering.  *See* Tr. 12-13. The Commissioner defines frequent as occurring one-third to two-thirds of an 8-hour workday. Tr. 154.  Dr. Baten's RFC assessment indicates Marlin could only "occasionally" perform these

activities.  As a specialist and treating physician, Dr. Baten's opinion warrants greater weight than the opinions of non-examining agency consultants.  Accordingly, on remand, if the ALJ decides to disregard Dr. Baten's opinion, he must set forth "specific, legitimate reasons" for his decision.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1996).

Significantly, although the ALJ acknowledged that on April 18, 2006, Marlin had undergone "a nerve conduction study" that revealed she suffered from "bilateral ulnar neuropathy," nonetheless, the ALJ did not take this into consideration in determining her RFC. Tr. 32.  On remand, in determining Marlin's RFC, the ALJ should consider all her impairments. Finally, on remand, the ALJ also should redetermine Marlin's credibility.

**C.  Conclusion**

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  After such review, the Court finds that the ALJ's decision of nondisability is not supported by substantial evidence. Accordingly, this matter is remanded to allow the ALJ to redetermine Marlin's RFC, consult a vocational expert if necessary and redetermine his credibility finding for the closed period from December 31, 2003 through March 28, 2008.[2]

									**DON J. SVET**
									**United States Magistrate Judge**

---

[2] Marlin filed a subsequent application for disability insurance benefits while her initial claim was pending review by the Appeals Council.  On November 19, 2009, a second ALJ approved the subsequent application with an assessed disability onset date of March 29, 2008. *See* Pl.'s Mot, Reverse or Remand; Ex.  A.